**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

CHRISTOPHER H.[1]                                      Case No. 2:23-cv-361

                    Plaintiff,

            v.                                                    Bowman, M.J.

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.

**MEMORANDUM OF OPINION AND ORDER**

Plaintiff Christopher H. filed this Social Security appeal in order to challenge the Defendant's finding that he is not disabled.  *See* 42 U.S.C. § 405(g).  Proceeding through counsel, Plaintiff presents one claim of error, which the Defendant disputes.  The parties have consented to the jurisdiction of the undersigned magistrate judge.  *See* 28 U.S.C. §636(c).  As explained below, the Administrative Law Judge (ALJ)'s finding of non-disability is REVERSED and REMANDED, because it is not supported by substantial evidence in the administrative record.

### I.  Summary of Administrative Record

Plaintiff applied for disability insurance benefits (DIB) in December 2015, claiming disability beginning on May 30, 2012. (Tr.289-90). His application was denied initially and upon reconsideration. (Tr. 188-90, 195-201). After a hearing, the ALJ issued an unfavorable decision, dated June 28, 2018, finding that Plaintiff was not under a disability

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.  *See* General Order 22-01.

as defined in the Social Security Act (Act). (Tr. 12-25). Plaintiff appealed the ALJ decision, and in May 2020, the Appeals Council issued a remand order consistent with the order of this Court[2] remanding this case to the agency for further administrative proceedings. (Tr. 732).  Thereafter, a video hearing was held on October 28, 2021, Plaintiff appeared with counsel and gave testimony before ALJ Noceeba Southern.  Vocational Expert Lauren Petkoff also appeared and gave testimony.  On November 18, 2021, the ALJ issued a written decision, concluding that Plaintiff was not disabled. (Tr. 645-62).

Plaintiff was born on September 24, 1982, and was 35 years old on his date last insured. (Tr. 661).  He has a high school education and has past relevant work as a hand packager and user support analyst. In 2008, Plaintiff suffered a traumatic brain injury after he fell down the stairs striking his head on a concrete step.

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments: "traumatic brain injury; generalized anxiety disorder; major depressive disorder, headaches, asthma, subclinical seizures, and obstructive sleep apnea."   (Tr. 648). The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1.  Despite these impairments, the ALJ determined that Plaintiff retains the RFC to perform light work subject to the following limitations:

> He can tolerate performing simple, routine repetitive tasks, with few detailed instructions; he should avoid work with fast pace or strict production quotas; he is limited to performing low stress work, defined as work with occasional changes and occasional decision-making in a static environment and, where there are changes, supervisory support should be provided during the changeover; he could tolerate occasional but superficial interactions with coworkers and supervisors, where superficial is defined as that which is beyond the performance of job duties and job functions, for a specific purpose and short duration; he should avoid interactions with the public; he should avoid tandem work; and he would be off task

---

[2] See 2:19cv854

2

for up to 30 minutes of the day spread throughout course of day in increments of 3 - 4 minutes at a time.

(Tr. 651).

Based upon her RFC and testimony from the vocational expert, the ALJ concluded that Plaintiff could perform jobs that exist in significant numbers in the national economy, including routing clerk, inspector/hand packager and marker. (Tr. 661).  Accordingly, the ALJ determined that Plaintiff is not under disability, as defined in the Social Security Regulations, and is not entitled to DIB.  *Id.*

The Appeals Council denied Plaintiff's request for review.  Therefore, the ALJ's decision stands as the Defendant's final determination.  On appeal to this Court, Plaintiff argues that the ALJ erred by failing to properly evaluate the opinion evidence.  Upon close analysis, I conclude that Plaintiff's assignment of error is well-taken.

I.    **Analysis**

A.  **Judicial Standard of Review**

To be eligible for benefits, a claimant must be under a "disability."  *See* 42 U.S.C. §1382c(a).  Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies.  *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

3

*Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted).  In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).  If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability.  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).  As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts.  If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.*  (citations omitted).

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy.  *See Combs v.  Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); *see also Walters v. Comm'r of Soc. Sec.*, 127 F.3d

525, 528-29 (6th Cir. 1997) (explaining sequential process); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits.  20 C.F.R. § 404.1512(a).  A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job.  42 U.S.C. § 423(d)(1)(A).

**B. The ALJ's Decision is not supported by Substantial Evidence**

Plaintiff argues that the ALJ failed to adequately evaluate the opinion evidence of record resulting in an inaccurate residual functional capacity.  Specifically, Plaintiff argues that the ALJ erred in failing to give controlling weight to the findings of Dr. Thornton and Dr. Watt.  Plaintiff's contentions are well taken.

The regulatory scheme in effect at the time Plaintiff filed his application set forth a hierarchy of presumptions regarding the weight to be given to differing medical source opinions. Under those regulations, "an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination (a "nonexamining source"), id. § 404.1502, 404.1527(c)(1), and an opinion from a medical source who regularly treats the claimant (a "treating source") is afforded more weight than that from a source who has examined the claimant but does not have an ongoing treatment relationship (a "nontreating source")." *Gayheart v. Com'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013).

Thus, a medical opinion is entitled to controlling weight if it is from a treating source and is "well-supported by medically acceptable clinical and laboratory diagnostic

techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530 (6th Cir. 1997).

The regulation that defines the treating physician rule states: "If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." 20 C.F.R. § 404.927(c)(2); see also *Warner v. Com'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004); SSR 96-2p. If the ALJ determines that a treating physician's opinion is not entitled to controlling weight, the ALJ is required to articulate "good reasons" for that decision. Id. Under the "good reasons" standard, an ALJ cannot reject a treating physician's opinion solely based on the conflicting opinions of non-examining consultants. Nor may an ALJ subject a treating physician's opinions to greater scrutiny than the opinions of consulting physicians. *See Gayheart v. Com'r of Soc. Sec.*, 710 F.3d at 377. Additionally, in cases when an ALJ does not give controlling weight to the opinion of a treating physician, the ALJ must explain the weight given to the opinion after considering the following relevant factors: the length, nature, and extent of treatment relationship, evidence in support of the opinion; consistency with the record as a whole; and the physician's specialization. 20 C.F.R. § 416.927(c).

In determining the weight of medical source opinions not entitled to controlling weight, an ALJ will evaluate the following factors: the length, nature, and extent of treatment relationship; evidence in support of the opinion; consistency with the record as

a whole; and the physician's specialization. 20 C.F.R. § 404.1527(c); see *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010).

The RFC is the "most [an individual] can still do despite [his physical and mental] limitations." 20 C.F.R. § 416.945(a)(1). An ALJ determines the claimant's RFC using "all the relevant evidence in [the] case record." Id. Yet it is the claimant's burden to establish his RFC. See id. § 416.945(a)(3) ("In general, you are responsible for providing the evidence we will use to make a finding about your residual functional capacity."); see also *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008) (claimant bears the burden of demonstrating a more restrictive RFC); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993) ("Plaintiff has the ultimate burden of establishing the existence of disability.").

Here, in formulating Plaintiff's RFC, the ALJ assigned partial weight to the opinion of Dr. Thornton and Dr. Watt. Notably, in February 2016, Dr. Thornton completed a one-time psychological consultative examination of Plaintiff. (Tr. 459-65). She diagnosed him with sequalae of diffuse traumatic brain injury with loss of consciousness of unspecified duration and major neurocognitive disorder, due to traumatic brain injury. (Tr at 464). Dr. Thornton opined Plaintiff's ability to understand, remember, and carry out instructions was below his estimated intelligence because of the history of traumatic brain injury, which would prevent him from functioning at his prior levels; his failure in executive function would significantly impair his ability to perform everything but simple tasks in a workplace; his social deficits appeared to be mild relative to other deficits; and Plaintiff did not appear to be particularly stressed by the evaluation. (Tr. 464-65).

Additionally, in August 2023, Dr. Watt administered a neuropsychological evaluation and diagnosed Plaintiff with focal cognitive deficits, generalized anxiety disorder and major depressive disorder (Tr. at 436-42). Dr. Watt opined that Plaintiff demonstrated many areas of strong cognitive functioning combined with areas of mild to severe deficit, and she opined that his overall IQ was average. (Tr. at 441). She opined that his perceptual reasoning indexes are in the superior range and this suggests that there has likely been at least a mild decline in overall executive functioning in comparison to estimated premorbid levels of functioning. (Tr. at 441). Dr. Watt opined that Plaintiff was likely to be able to participate in employment that provided structure and involved rote activities that could be learned fairly quickly through repetition; however, he would not be able to obtain and maintain competitive employment until his issues with behavioral control, depression, and anxiety have been addressed (R. at 22-23, 442).

The ALJ determined that Dr. Thornton's opinion was were neither totally consistent with nor totally supported by the record because the opinion appears to rely heavily on the subjective statements of the Plaintiff and his wife, who was present during the evaluation.   The ALJ further noted that that while the evidence of record demonstrates continued severity of Plaintiff's symptoms, it does not support the increased severity reported by Plaintiff and his wife during the evaluation. Alternatively, the ALJ found that the mental limitations contained in Plaintiff's RFC adequately account for, and accommodate, the limitations resulting from his severe mental impairments by limiting the nature, complexity, and pace of his work activities as well as the nature and frequency of his interactions with others in the workplace due to the combined effects of said impairments.

With respect to Dr. Watt, the ALJ found her opinion was partially consistent with and supported by the totality of the record, particularly her opinion in regards to the Plaintiff's need for mental health treatment and his IQ score assessed during the evaluation. However, the ALJ assigned little weight to her conclusion that Plaintiff is unable to sustain employment, because that opinion is neither consistent with nor supported by the totality of record, as this conclusion conflicts with her opinion that Plaintiff is likely to be able to participate in employment that provides structure and involves rote activities that can be learned fairly quickly through repetition. (Tr. 657-658).

Plaintiff argues that the ALJ's evaluation of these opinions are not supported by substantial evidence.  The undersigned agrees.  Notably, Plaintiff contends that the ALJ's assessment of these opinions failed to provide any meaningful explanation or rationale for her conclusions.  More specifically, Plaintiff contends that the ALJ simply stated that their opinions were not consist with nor supported by the record but did not go a step further and explain why they were not consistent or supported.  Moreover, the ALJ rejected Dr. Thornton's and Dr. Watt's mental limitations finding that the RFC sufficiently accounts for Plaintiff's mental limitations but does not provide any additional explanation. As a rule, an ALJ must build an accurate and logical bridge between the evidence and his conclusion. *Fleischer v. Astrue*, 774 F.Supp.2d 875, 877 (N.D. Ohio 2011); see also *Wilson v. Com'r of Soc. Sec.*, 378 F.3d 541, 544-546 (6th Cir. 2004) (holding it was not harmless error for the ALJ to fail to make sufficiently clear why he rejected the treating physician's opinion, even if substantial evidence not mentioned by the ALJ existed to support the decision to reject the treating physician's opinion). Thus, "an ALJ's decision must articulate with specificity reasons for the findings and conclusions that he or she

makes." *Bailey v. Com'r of Soc. Sec.*, 173 F.3d 428, 1999 WL 96920 at *4 (6th Cir. Feb, 2, 1999) (Table); *see also Hurst v. Sec'y of HHS*, 753 F.2d 517 (6th Cir. 1985) (articulation of reasons for disability decision essential to meaningful appellate review); Social Security Ruling (SSR) 82–62 at *4 (the "rationale for a disability decision must be written so that a clear picture of the case can be obtained").

Furthermore, as noted by Plaintiff, there is relevant evidence in the record that is consistent with Dr. Thornton's and Dr. Watt's opinions.  See 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion"). Dr. Risk, another treating source, determined that Plaintiff suffered from residual cognitive deficits as a result of his traumatic brain injury including poor verbal fluency and memory loss. (Tr 420).  Dr. Risk also concluded that Plaintiff had "focal cognitive deficits primarily in the area of new learning and recall of verbal and visual information and in variability across attention tasks." Id. Dr. Risk determined that Plaintiff could not maintain competitive employment. Id.  Similarly, Dr. Simensky treated Plaintiff for remote severe traumatic brain injury. (Tr. 452).  Dr. Simensky noted that Plaintiff struggled with a number of different neurological and psychological problems since his accident, that affected his ability to make judgments, and sustain attention and concentration. Id.  Dr. Simensky's notes documented continuing issues with cognitive dysfunction, mood lability, memory problems, and word-finding difficulty. Id.  Dr. Simensky concluded that Plaintiff was permanently disabled, and unable to hold a job. Id.

Additionally, the ALJ rejected Dr. Watt's opinion, in part, finding that it was internally inconsistent.  Notably, Dr. Watt concluded:

> From a cognitive perspective he is likely able to participate in employment
> that provides structure and involves rote activities that can be fairly quickly

learned through repetition. However, from a neurological perspective the patient continues to have periods of confusion, agitation, and amnesia. And he has difficulties with behavior control, depression and anxiety. Therefore, he will not be able to obtain and maintain competitive employment until his issues have been addressed.

(Tr. 442).

The ALJ concluded that Dr. Watt's finding that Plaintiff could participate in structured employment contradictory to his finding that Plaintiff must first resolve his difficulties with behavior control, depression and anxiety before he can maintain employment.  Again, however, the ALJ provided no further explanation regarding this finding.  The ALJ also noted that her RFC adequately accounted for Plaintiff's mental limitations.  However, the RFC did not account for a structured environment as outlined by Dr. Watts.  The ALJ also did not provide any explanation for why such a limitation was not included in Plaintiff's RFC.

 The ALJ's failure to provide such an explanation requires remand because it prevents this Court from conducting meaningful review to determine whether substantial evidence supports her decision. *See Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (noting that an ALJ's decision "must include a discussion of 'findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record.'" (quoting 5 U.S.C. § 557(c)(3)(A))); *Allen v. Astrue*, No. 5:11-cv-95, 2012 WL 1142480, at *8 (N.D. Ohio Apr. 4, 2012) (remanding where "the ALJ failed to properly articulate the RFC calculation," explaining that the Court was "unable to trace the path of the ALJ's reasoning"); *Commodore v. Astrue*, No. 10-295, 2011 WL 4856162, at *4, 6 (E.D. Ky. Oct. 13, 2011) (remanding action "with instructions to provide a more thorough written analysis," where the ALJ failed to articulate the

reasons for his RFC findings such that the Court could not "conduct a meaningful review of whether substantial evidence supports the ALJ's decision"); Cote, 2017 WL 448617, at *7 (requiring the ALJ to "build a logical bridge between the evidence and any social functioning limitations that he chooses to include in the residual functional capacity assessment").

### III. Conclusion and Order

A sentence four remand under 42 U.S.C. § 405(g) provides the required relief in cases where there is insufficient evidence in the record to support the Commissioner's conclusions and further fact-finding is necessary. *See Faucher v. Secretary of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citations omitted). In a sentence four remand, the Court makes a final judgment on the Commissioner's decision and "may order the Secretary to consider additional evidence on remand to remedy a defect in the original proceedings, a defect which caused the Secretary's misapplication of the regulations in the first place*." Faucher*, 17 F.3d at 175. All essential factual issues have not been resolved in this matter, nor does the current record adequately establish Plaintiff's entitlement to benefits as of his alleged onset date. *Faucher*, 17 F.3d at 176.

Accordingly, **IT IS ORDERED THAT** Defendant's decision be **REVERSED AND REMANDED** under sentence four for further proceedings consistent with this opinion.

*s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge